UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN POMEROY,

                Plaintiff,               Case No. 1:23-cv-12333

v.                                          Hon. Brandy R. McMillion
                                                 United States District Judge

PARAMOUNT REHABILITATION
SERVICES, P.C., *et al.*,

                Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 24)**

      Plaintiff Karen Pomeroy ("Pomeroy") brought this discrimination action against Paramount Rehabilitation Services, P.C. ("PRS") and Sunil Malewar ("Malewar") (collectively, "Defendants")[1], under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12102 *et seq*. *See generally* ECF No. 1. PRS now moves for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56. ECF No. 24. The Motion has been adequately briefed so the Court will rule without a hearing. *See* ECF Nos. 27, 28; E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] In response to this Motion, Plaintiff voluntarily acknowledged Malware is dropped from this matter and claims will only proceed against Defendant PRS. *See* ECF No. 27, PageID.393.

1

## I.

Pomeroy is an eighth-year Human Resources professional. *See* ECF No. 1, PageID.5. On May 23, 2022, she began working as a fulltime, at-will Human Resources Director for PRS. *See* ECF No. 24, PageID.207. PRS provides physical, occupational, and speech therapy services to adults and children in Arenac, Bay and Saginaw Counties. *See id.* at PageID.206. The company is owned and operated by Sunil Malewar, who was directly responsible for hiring Pomeroy. ECF No. 1, PageID.4; ECF No. 27-4, PageID.516-517. Pomeroy suffers from osteoarthritis and other leg and knee issues. *See* ECF No. 1, PageID.5. However, she alleges that her disability is unrelated to her ability to perform the duties of her job. *See id.*

Just three months after Pomeroy's hiring, the working relationship between the parties began to deteriorate, leading to this dispute. PRS alleges Pomeroy began engaging in a pattern of disruptive job performance, including failing to complete tasks, changing company procedures without authorization, leaving the office without permission, and parking in unauthorized areas reserved for patients. *See id.* On August 31, 2022, PRS, through Malewar, met with Pomeroy to discuss her job performance. Pomeroy was provided with a letter that stated:

> You have started about 3 months ago and given the job description was asked to complete the scanning for all previous staff in June 2022 . . . still not completed. …
>
> You have been attending therapy at this clinic which has been about 3-4 hours a week as well numerous times you have other appointments

> and personal work but not informing me has (sic) been taking off during your scheduled working time of 8 AM-5:30 P.M.
>
> Due to limited parking in Bay City Main office all employees has (sic) to park in the North east designated Employee parking [lot] accordingly you were instructed multiple times but still you have been parking in Patients (sic) parking. From now ion (sic) you will be parking in the employee parking.
>
> On multiple occasions you have been trying to change the procedure and systems without my knowledge and giving instructions to other staff. You are not allowed to change any procedure in Billing, HR and management without may written and verbal permission. As you are not the supervisor of any staff member of Paramount. Your suggestions are always welcome and can be discussed in the meeting.
>
> This is the first warning and I hope you would take it seriously.

*See* ECF No. 24, PageID.208.

After the meeting, Pomeroy submitted an Accommodation Request form which stated:

> I am requesting to park closer to the employee door since I have trouble walking. In complying with the ADA, I am asking for a reasonable accommodation to park closer to the door or use my handicap placard. Thank you.

*See* ECF No. 24, PageID.208-209. PRS notes that Pomeroy's request did not identify any alleged disability that substantially limited a major life activity nor did she state that she had any substantial limitations that would have hinder her job performance. *See id.* at PageID.209.

On September 1, 2022, in response to Pomeroy's email, Malewar asked for proof of her handicap placard. ECF No. 24-2, PageID.242. Once provided, Malware granted Pomeroy's request to park in the handicap parking space in the front of the

3

building. *See* ECF No. 24, PageID.209. Despite this, Pomeroy alleges that the allotted space required her to walk the same length as her previous parking. ECF No. 27, PageID.388.

On September 9, 2022, PRS discovered Pomeroy had purchased Amazon gift cards totaling $1,124.60, using PRS credit cards. *See* ECF No. 24, PageID.210. Considering this unauthorized activity, PRS terminated Pomeroy from the company. *See id.* at PageID.211. PRS reported this to law enforcement which resulted in criminal charges against Pomeroy for one count of embezzlement. *See id.* at PageID.214; ECF No. 24-2, PageID.256. Those charges were eventually dismissed. ECF No. 27, PageID.401; ECF No. 28, PageID.545-546.

On December 19, 2022, Pomeroy filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination in violation of the ADA. ECF No. 24-6, PageID.340. She also initiated a civil action before the Saginaw County Circuit Court on March 8, 2023.[2] ECF No. 24-8, PageID.349. On June 15, 2023, the EEOC issued Pomeroy a right to sue letter. ECF No. 24-9, PageID.368.

Pomeroy proceeded to file this action on September 13, 2023, alleging claims of disability discrimination and retaliation under the ADA. *See* ECF No. 1. This case was originally assigned to the Honorable Laurie J. Michelson, then reassigned

---

[2] PRS represented that the Saginaw County Circuit Court case is no longer pending. *See* ECF No. 24, PageID.205, n.1. Pomeroy does not dispute this allegation.

to the undersigned. *Administrative Order* 24-AO-007. This Motion followed and was fully briefed. *See* ECF Nos. 24, 27, 28. Having reviewed the parties' briefs, the Court finds oral argument unnecessary and will decide the Motion based on the record before it. *See* E.D. Mich. LR 7.1(f).

## II.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once the moving party makes this showing, the nonmoving party must present "significant probative evidence" revealing that there is "more than some metaphysical doubt as to the material facts necessitating a trial[.]" *Green Genie, Inc. v. City of Detroit, Mich.*, 63 F.4th 521, 526 (6th Cir. 2023). The "facts must be viewed in the light most favorable to the nonmoving party *only if* there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In making the determination on summary judgment whether there are genuine issues of material fact for trial, the court must draw all reasonable inferences in favor of the non-moving party. *See Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir.

2015). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

## III.

Pomeroy's Complaint alleges two counts under the ADA: (1) discrimination and (2) retaliation. *See generally* ECF No. 1. PRS moves for summary judgment on Pomeroy's ADA discrimination claim (Count I) to the extent it alleges a failure to accommodate claim and a general disability discrimination claim. *See* ECF No. 24, PageID.215-222. PRS also moves for summary judgment on Pomeroy's ADA retaliation claim (Count II). The Court will address each in turn.

A.  **ADA DISABILITY DISCRIMINATION (COUNT I)**

    **1. Failure to Accommodate**

PRS argues it is entitled to summary judgment on Count I to the extent it alleges a failure to accommodate claim because it granted Pomeroy's requested accommodation. *See* ECF No. 24, PageID.221. The Court does not read the Complaint to allege a failure to accommodate claim under the ADA. However, for the sake of completeness, the Court nonetheless evaluates the parties' arguments and finds that summary judgment should be granted in PRS's favor.

"Disability discrimination includes a failure to make reasonable accommodations" for an individual's known disability. *See Blanchet v. Charther*

6

*Commc'ns., LLC*, 27 F.4th 1221, 1227 (6th Cir. 2022). To establish a failure to accommodate claim, Pomeroy must show (1) that she was disabled, and (2) that she was otherwise qualified for the position despite her disability: (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation. *See Fisher v. Nissan North Am., Inc.*, 951 F.3d 409, 417 (6th Cir. 2020) (citing *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 869 (6th Cir. 2007)). "[O]nce [Pomeroy] establishes that [PRS] failed to accommodate a known disability, [PRS] bears the burden 'of proving that . . . a proposed accommodation will impose an undue hardship upon the employer.'" *See Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) (alteration in original).

For the purpose of this Motion, PRS does not contested that Pomeroy is disabled or that she was qualified for the HR position. *See* ECF No. 24, PageID.221, n.11; *see also* ECF No. 27, PageID.395, n.3. But summary judgment in favor of PRS is still appropriate because Pomeroy cannot show that PRS failed to grant her accommodation request. The record before the Court establishes Pomeroy requested "a reasonable accommodation to park closer to the door **_or_** use [her] handicap placard." *See* ECF No. 24-2, PageID.242 (emphasis added). Pomeroy does not contest that PRS did in fact give her access to park in the handicap space in the front of the building. *See* ECF No. 27, PageID.400; ECF No. 27-2, PageID.420. Rather,

7

Pomeroy argues that the designated handicap space was not a "solution" to her underlying concern because she had to walk the same distance; and PRS failed to provide a reasonable accommodation because she was really requesting "a spot closest to the employee door as there was no *employee* handicap spot." *See* ECF No. 27 at PageID.400. The Court finds this argument unpersuasive.

"The ADA does not obligate employers to make on-the-spot accommodations of the employee's choosing." *Brumley*, 909 F.3d at 840. If the accommodation is reasonable, that is sufficient to meet the requirements of the ADA. *Kleiber*, 485 F.3d at 868. Pomeroy argues that the provided accommodation was not a good solution because it "depriv[ed] patients of parking." *See* ECF No. 27, PageID.400. But despite not being obligated to provide an accommodation at the expense of the patients visiting the facility, PRS still allowed Pomeroy to park in the reserved handicap parking space in the patient lot. *See Hindelang v. Bay Medical Center*, No. 217487, 2000 WL 33409628, *3 (Mich. Ct. App. Aug. 11, 2000) (an employer is under no duty to accommodate an employee by allowing them to park in areas reserved for non-employees).

Pomeroy further asserts that PRS failed to engage in an "informal interactive process" to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." ECF No. 27, PageID.400-401. This argument is also unavailing. While the ADA

8

contemplates that the parties will engage in meaningful interaction to reach reasoned accommodations, that process must be done in good faith, by both parties, without "causing unnecessary delays or obstructing the process." *See Brumley*, 90 F.3d at 840. In engaging in the interactive process, Pomeroy made the accommodation request in writing; and Malewar asked for proof of her disability. And there is no dispute that after Pomeroy provided the handicap placard, PRS promptly gave her the exact accommodation that she asked for – handicap parking. *See* ECF No. 28, PageID.543.

Even in viewing this in the light most favorable to Pomeroy, the record, taken as a whole, could not lead a rational trier of fact to find that PRS failed to offer the very accommodation she requested. Therefore, to the extent that Count I alleges a failure to accommodate claim, the Court grants summary judgment in PRS's favor as a matter of law because the request for an accommodation was granted.

### 2. Disability Discrimination

The Court reads Pomeroy's Complaint to raise a general disability discrimination claim. ECF No. 1, PageID.20-21. Pomeroy alleges PRS engaged in disability discrimination under the ADA when she was subjected to an adverse employment action because of her disability. *See* ECF No. 1, PageID.20-21. PRS now argues it is entitled to summary judgment because Pomeroy's disability discrimination claim fails as a matter of law. *See* ECF No. 24, PageID.215-226.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a). To make out a *prima facie* case of disability discrimination under the ADA, Pomeroy must show that: (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of her disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *See Keogh v. Concentra Health Servs., Inc.*, 752 F. App'x 316, 324 (6th Cir. 2018) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)). "The plaintiff's disability must be a 'but for' cause of the adverse employment action." *Demanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014) (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012)). When evaluating a disability discrimination claim using indirect evidence, the Court applies the *McDonnell-Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Gray v. State Farm Mut. Auto. Ins. Co.*, 145 F.4th 630, 637 (6th Cir. 2025). If a *prima facie* case of disability discrimination is established, PRS must then articulate a legitimate, non-discriminatory reason for its adverse action. *See id.* (citing *Kirilenko-Ison v. Bd. of Educ.*, 974 F.3d 652, 637 (6th Cir. 2020)). If so, then the

burden shifts back to Pomeroy to prove PRS's explanation is pretext for unlawful discrimination. *See Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 314 (6th Cir. 2001).

PRS alleges Pomeroy's *prima facie* case fails for two reasons: (1) PRS lacked notice that Pomeroy had a disability, and (2) even if notice was provided, Pomeroy's alleged disability was not the "but for" cause of her adverse employment action. *See* ECF No. 24, PageID.217. As stated, for the purposes of this motion, PRS is not challenging Pomeroy's disability or qualifications. *Id.* at PageID.221, n.11. And the record reflects that Pomeroy was subject to an adverse employment action – she was terminated. *See Barrett v. Lucent Tech., Inc.*, 36 F. App'x 835, 843 (6th Cir. 2002) ("Termination from employment is an adverse employment action."). But the issues of knowledge and causation are disputed.

### a. Knowledge of Pomeroy's Disability

"An employee cannot be subject to an adverse employment action based on his disability unless the individual decisionmaker responsible for his demotion has knowledge of that disability." *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (citing *Niles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 368 (6th Cir. 2013); *Arthur v. Am. Showa, Inc.*, 625 F. App'x 704, 708 (6th Cir. 2015)). Malewar admits that he was the decision maker for PRS. *See* ECF No. 24-5, PageID.333; ECF No. 27-4, PageID.516. Thus, the Court analyzes whether Malewar, on behalf of PRS, knew or had reason to know Pomeroy had a disability.

11

Based on the evidence presented, the Court finds the parties materially dispute knowledge of Pomeroy's disability.

Typically, "[a]n employer has notice of the employee's disability when the employee tells the employer that [she] is disabled." *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999). "Of course, the employee need not use the word 'disabled,' but the employer must know enough information about the employee's condition to conclude that [they are] disabled." *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 563 (6th Cir. 2022) (citing *Cady v. Remington Arms Co.*, 665 F. App'x 413, 418 (6th Cir. 2016)). The communication should be clear and not require the employer to speculate the extent of the employee's disability. *See Rexhaj v. Sweeping Corp. of Am.*, 728 F. Supp. 3d 687, 699 (E.D. Mich. 2024) (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998)). Vague assertions of concern are not enough to allege the employer had notice. *See Hrdlicka v. General Motors, LLC*, 63 F.4th 555, 567 (6th Cir. 2023) (citing *Cady*, 665 F. App'x at 417-18). However, an employee's requests for accommodation can put an employer on notice of a disability. *See King,* 30 F. 4th at 564.

PRS argues it did not have notice of Pomeroy's disability because she never said she suffered from any disability, and only informed Malewar "that she had pain in her hip, and he knew [about it] during her employment." *See* ECF No. 24,

PageID.219. But Pomeroy does not need to explicitly mention that she is disabled for PRS to have notice of her disability. *See King*, 30 F.4th at 564 ("[A]n employee does not have to use 'magic words' or explicitly use the word "disability" to put her employer on notice of her condition."). Pomeroy asserts that she did provide notice to Malewar of her disability at the time of her hire and several times throughout her employment. ECF No. 27-2, PageID.432. Pomeroy also requested an accommodation "to park closer to the employee door since [she had] trouble walking." ECF No. 24-2, PageID.241; ECF No. 28, PageID.543. In negotiating that request, she provided PRS with a copy of her handicap placard. *See* ECF No. 24-2, PageID.243; ECF No. 27, PageID.396. She also received treatment through PRS facilities when time allowed. ECF No. 24-5, PageID.334. Malware even provided testimony that he knew Pomeroy had knee pain and suggested for her to use PRS for treatment. *See* ECF No. 24-5, PageID.333. And while knowing she had knee pain is not the same as knowing she had a disability, *see Messenheimer v. Costal Pet Prods., Inc.*, 764 F. App'x 517, 519 (6th Cir. 2019); *accord Brown v. BKW Drywall Supply, Inc.*, 305 F. Supp. 2d 814, 829-30 (S.D. Ohio 2004), it is enough to at least dispute a claim against notice when taken into consideration with the other evidence presented. *See King*, 30 F.4th at 564.

PRS's reliance on the unpublished decision in *Cady v. Remington Arms Co.*, 665 F. App'x 413 (6th Cir. 2016) is inapposite. In *Cady*, the Court reversed granting

13

summary judgment for the employer because a genuine issue of material fact existed as to whether the employee notified his employer that his back problems made him disabled. *Cady*, 655 F. App'x at 418. In evaluating the notice requirement for a disability, the Court there also reasoned that "the employee need not use the word 'disabled,' but the employer must know enough information about the employee's condition to conclude that he is disabled." *Id.* at 417. Whether the employer had relevant information is the key to evaluate this inquiry. *Id.* (citing *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 737-38 (6th Cir. 2015)).

The Court, therefore, finds that there is sufficient disputed information for a jury to consider in determining if PRS had knowledge of Pomeroy's disability.

### b. But-For Causation

The burden of showing causation is minimal only requiring "some evidence to deduce a causal connection between the adverse action and the protected activity." *See Gray*, 145 F.4th at 637 (citing *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009); *A.C. ex rel J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 699 (6th Cir. 2013)). PRS submits that Pomeroy was terminated for "poor job performance" and "egregious and dishonest misconduct in misusing PRS's credit card to purchase Amazon gifts cards." ECF No. 24, PageID.223. PRS even asserts that it reported that conduct to law enforcement upon terminating Pomeroy, and she was charged with embezzlement. *Id.* This allegedly is further evidence that they had a legitimate reason for terminating her. *Id.*

14

But Pomeroy points out that the charges against her were dropped and that there was "simply no concrete or legitimate evidence that she ever took or embezzled any funds." ECF No. 27, PageID.402. She also argues that her actions were consistent with her predecessor, and that direct comparator shows her termination would not have occurred but for her disability and request for accommodation. *Id*. at PageID.398. The Court finds this sufficient to establish a genuine issue of material fact as to causation. This case will likely turn on who the jury believes when it comes to the rationale for Pomeroy's termination and because of that summary judgment is not appropriate.

### 3. Same Actor Inference

PRS also argues for summary judgment under a theory of the same actor inference. *See* ECF No. 24, PageID.226. The same actor inference allows an inference of lack of discriminatory animus where the same person is responsible for the hiring and firing of the individual alleging discrimination. *See Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995). Here, despite the undisputed fact that Malewar both hired and fired Pomeroy, the Court finds this theory inapplicable in this case. Even where an employee was "hired and fired by the same individual," the inference is not mandatory and may be weakened by other evidence. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003). The inference "cannot be an independent reason to grant summary judgment where there are other disputes of material fact." *Gaglioti v. Levi Grp., Inc.*, 508 F. App'x 476,

15

483 (6th Cir. 2012). And because the Court has found a genuine issue of material fact exists as to Pomeroy's disability discrimination claim, the Court denies summary judgment under the same actor inference.

In all, the parties dispute the notice of Pomeroy's disability and the cause of Pomeroy's termination, and because this is a question of fact for a jury to decide, the Court finds a genuine issue of material fact exists on the disability discrimination claim. Therefore, summary judgment is denied as to Count I.

**B.    RETALIATION IN VIOLATION OF THE ADA (COUNT II)**

Lastly, PRS urges the Court to grant summary judgment on the retaliation claim because it argues Pomeroy cannot establish a *prima facie* case. *See* ECF No. 24, PageID.228. As with the disability discrimination claim, Pomeroy relies on indirect evidence, so the *McDonnell-Douglas* framework applies. *See Gray*, 145 F.4th at 637. Again, if a *prima facie* case of retaliation is established, PRS must then articulate a legitimate, nonretaliatory reason for its adverse action. *Id.* If done, then Pomeroy "must show that the [proffered] reason is [pretextual]." *See id.* To establish a *prima facie* case of retaliation in violation of the ADA, Pomeroy must demonstrate that (1) she was engaged in a protected activity, (2) this activity was known by Defendants, (3) Defendants took an employment action adverse to Pomeroy, and (4) that there was a causal connection between the protected activity

and the adverse employment action. *See Kirkilenko-Ison v. Bd. of Educ.*, 974 F.3d 652, 661 (6th Cir. 2020).

Here, Pomeroy alleges she engaged in a protected activity when she requested an accommodation for her disability. *See* ECF No. 27, PageID.405. PRS admits it knew about her request. *See* ECF No. 24, PageID.208. And both parties agree that Pomeroy's termination qualifies as an adverse employment action. *See id.*; ECF No. 27, PageID.405. But the parties dispute the but-for-causation requirement necessary to show Pomeroy's termination was the result of her request for an accommodation. As discussed *supra*, PRS submits that Pomeroy's termination was job related and as a result of criminal misconduct; which is materially disputed by Pomeroy who provides that no criminal actions were ever prosecuted and that she performed her job just as her predecessors did without recourse. *See supra* Section A.2.b. Because the reason for Pomeroy's termination is genuinely disputed, summary judgment is not appropriate.

Thus, the Court finds a genuine issue of material fact exists on whether Pomeroy has established a *prima facie* case for retaliation under the ADA. Because of that, the Court need not analyze whether Pomeroy as terminated for a non-pretextual reason. Therefore, summary judgment is denied as to Count II.

## IV.

Accordingly, to the extent that Count I alleges a claim for a failure to accommodate under the ADA, summary judgment is **GRANTED**. However, because Pomeroy establishes genuine issues of material fact on Count I (ADA Disability Discrimination) and Count II (ADA retaliation), PRS's Motion for Summary Judgment (ECF No. 24) is **DENIED** as to those claims.

**IT IS SO ORDERED.**

Dated: September 18, 2025  s/Brandy R. McMillion
      Detroit, Michigan  BRANDY R. MCMILLION
                                       United States District Judge